## Lewis Estate.

Argued November 28, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and HUGHES, JJ.

*Walter B. Gibbons,* with him *John W. Kephart,* for appellants.

*Boyd Lee Spahr,* with him *John R. K. Scott, William T. Connor, Hardie Scott, Ballard, Spahr, Andrews & Ingersoll, George Maxman* and *Raymond M. Remick,* for appellees.

OPINION BY MR. JUSTICE DREW, March 19, 1945:

The Orphans' Court of Philadelphia County, by Final Decree, dismissed exceptions filed to the adjudication of SINKLER, J., confirming nisi the First Account of the Pennsylvania Company for Insurances on Lives and Granting Annuities, Trustee under the will of Charles S. Lewis, Deceased, and confirmed the account absolutely; whereupon exceptants took these appeals.

Charles S. Lewis died May 11, 1891, and by his will and codicils gave his residuary estate to this trustee, in trust, to pay the income therefrom (less an annuity of $800 for his sister) to his children, one-fifth thereof to his son, Francis H. Lewis, with remainder over.

Francis H. Lewis died October 21, 1917, and by his will gave his residuary estate to the same trustee, in trust, to pay the income therefrom to Walter A. Buchanan for life and upon his death, to pay the remainder to the Most Reverend Patrick John Ryan, Archbishop of Philadelphia, or his successor in office.

At the audit of this First Account, it appeared that the trustee had received in distribution from itself as Executor, under the will of Charles S. Lewis, 250 shares of stock of Latrobe Steel Works, valued at $100.00 per share, a total of $25,000. And that on January 23, 1896, in the sale and liquidation of that company, it received in exchange for this stock 500 shares of the stock of Latrobe Steel Company, which had recently been incorporated. It further appeared that from January 17, 1906, to October 1, 1909, the trustee received in liquidation of these 500 shares the sum of $284,975. Of this amount $259,975. represented a gain over its awarded value, all of which accrued during the time of the life estate of Francis H. Lewis. The Steel Company liquidated between 1906 and 1910 when a decree of dissolution was entered in the Court of Common Pleas of Philadelphia County.

At the audit it was contended by the remainderman under the will of Francis H. Lewis, and by the trustee ad litem for the Estate of Francis H. Lewis, that there should be an apportionment; that the assets of both companies included, at the time of their respective liquidations, undistributed earnings; that part of the shares and cash received upon liquidation of the two companies represented such undistributed earnings, and should have been distributed to the then life tenants, instead of being carried as principal. If their contention should prevail

it would result in a payment to the Estate of Francis H. Lewis, who was the life tenant at the time the shares and cash were received, and would increase the fund held in trust under the will of Francis H. Lewis.

After extended hearings and exhaustive arguments, and a painstaking consideration of the whole case, the learned auditing judge held that the evidence was not sufficient to sustain that contention, and in dismissing the exception declared: "Whether any part of the purchase price paid for the Steel Works represented undistributed earnings, is a matter of conjecture. The evidence which the claimants have submitted fails to overcome the presumption that the price paid on liquidation represents capital only." His action in denying an apportionment was affirmed by a unanimous court.

Claimants agree, as stated by the auditing judge, that "There is no dispute that the sequence of transactions by which the Steel Company was organized and the assets of the Steel Works then transferred to it amounted to a liquidation of the Steel Works. . . . There is also no dispute over the point that the shares of the Steel Company stock received in exchange for the shares of Steel Works stock constituted a liquidation payment, and that this was not a stock dividend. There is also accord in respect to the fact that the intact value of one share of the Steel Works stock was $112.32, or a total intact value of $28,080. The parties likewise agree upon the basic principle that a life tenant is entitled to apportionment on liquidation to the extent that liquidation payments represent accumulated earnings."

It is agreed that the burden of proof was on claimants. The facts show it was a heavy burden, indeed an impossible one to carry. The first liquidation was in 1896, the second between 1906 and 1910, the life tenant lived until 1917, the estate trustee was the life tenant's testamentary trustee; and no claim was made until 1939—thirty years after the second liquidation and twenty-two years after the life tenant's death. During

these many years there were many changes, and as a result, claimants were forced to attempt to prove their case by evidence, which was poor and unsatisfactory.

Where a life tenant claims a part of the proceeds of a liquidation he has the burden of proof to show that any part of the profit thereby received was due to an accumulation of undistributed earnings. The presumption is that all of such proceeds of liquidation belongs to principal. The life tenant must show affirmatively that some part of it was due solely to accumulated earnings. We said, in *Nirdlinger's Estate*, 290 Pa. 457, 475, 139 A. 200: "The rise in the value of trust investments, where such rise has not been shown by one claiming as a life tenant to be due to undistributed earnings, has always been properly regarded, like the rise in the value of lands held in trust, to be an accretion of the principal, and, therefore, belongs to the remainderman." In *McKeown's Estate*, 263 Pa. 78, 86-7, 106 A. 189, this Court held that "When a corporation is liquidated, those entitled to the income of the trust are to be awarded so much of the sums received for the stock *as they show was income accruing after their right to income began, and the balance goes to principal;* and this is so although the course pursued takes the form of a sale of the stock." (Italics added.) It is also well established that the proceeds from the sale of stock are presumed to belong to the corpus of the trust: *Waterhouse's Estate*, 308 Pa. 422, 162 A. 295.

The parties afreed upon this basic principle of apportionment on liquidation but disputed regarding (1) the admissibility of certain evidence by which the claimants sought to prove the existence of undistributed earnings; (2) the sufficiency of such evidence to prove such earnings; and (3) whether the conduct of Francis H. Lewis, and his estate thereafter, was not such as now bars the assertion of a right to an apportionment.

The learned auditing judge said: "At the audit the apportionment claimants sought to introduce evidence

on the basis of which it could be found that part of the proceeds of the two liquidations represented undistributed earnings. No original balance sheets, income statements or books or records of either company were produced. The claimants sought to establish the loss, destruction or unavailability of the corporate records, and to introduce other evidence as a substitute." They offered, inter alia, the capital stock tax reports of the Steel Works to the Auditor General of Pennsylvania for the years 1890 to 1895, inclusive; the election return of the Steel Works voting increase of capital stock; return of actual increase of capital stock; and capital stock tax reports of the Steel Company to the Auditor General of Pennsylvania for the years 1896 to 1909, inclusive. These offers were received in evidence.

Claimants offered in evidence the whole record of the Common Pleas Court of Philadelphia County of the dissolution proceedings of the Steel Company. Also, they offered what purported to be a copy of a letter or report written in 1912 by an accounting firm in New York to an attorney in Ohio. These offers were objected to and the objection was sustained. We find no error in this ruling. To make the record of one case admissible in a subsequent proceeding, there must be an identity of the parties and of the subject-matter: *Breckons v. Snyder*, 211 Pa. 176, 60 A. 575; *Roberts v. Powell*, 210 Pa. 594, 60 A. 258; and *Fearn v. Ferry Co.*, 143 Pa. 122, 22 A. 708. No such identity existed in the dissolution proceeding and in the present litigation. The parties to the former were the corporation itself, the Commonwealth and the creditors, and the issue was whether the dissolution should be approved by the court. In this proceeding the parties are the beneficiaries of the Estate of Charles S. Lewis, Deceased, and the issue is whether any of the payments of stock or cash represented undistributed earnings earned during the life tenancy of the son, Francis H. Lewis. That the letter of the accounting firm was inadmissible also is equally clear. It was not a part of the

business of the company whose books were examined. It was not ordered by the company or approved by it thereafter. It was made upon the order of a third person in no manner connected with the corporation. It cannot be regarded as a record made in the course of the business of the company. It was properly excluded as a hearsay statement not coming within any of the exceptions to the rule prohibiting the introduction of hearsay evidence.

We are satisfied that the learned auditing judge committed no error in finding that claimants failed to overcome the presumption that the price paid on the liquidations of the Steel Works and the Steel Company represents capital only. There is no doubt in our minds that the court en banc was correct in stating, under the circumstances here that "To give credence to the records presented by them [claimants] would be to unfairly test the position of the beneficiaries of the principal estate. After the lapse of so many years and the apparent destruction of the only authoritative records we find it beyond our power to reconstruct from what is before us any of the facts claimed. . . .". Furthermore, the finding of the auditing judge that claimants failed to adduce sufficient evidence to substantiate their contention was affirmed by the court en banc, is supported by the evidence, and we are concluded thereby: *Kenna Estate,* 348 Pa. 214; 34 A. 2d 617; *Grenet's Estate,* 332 Pa. 111, 2 A. 2d 707.

In the view we have taken, it is unnecessary to pass upon the question as to whether the legal representative of Francis H. Lewis is estopped from asserting the claim for apportionment by reason of the acquiescence of Francis H. Lewis during his lifetime and thereafter by his executor and trustee, with knowledge of the allocation of the liquidations entirely to principal. We find no merit in the other assignments of error.

Decree affirmed, at claimants' cost.